# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-CR-123  PPS |
| | ) | |
| WILLIE HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Defendant Willie Harris' Motion to Reinstate Bond [DE 182].  I held a hearing on this motion on January 4, 2012.  I denied the motion at the conclusion of the hearing, and this order reduces my findings to writing.

Willie Harris was originally detained by the magistrate judge in 2010 but in August, 2011 he sought reconsideration of that decision.  On August 31, 2011, I held a hearing and concluded that the Government didn't show that Harris should be detained as a flight risk.  I therefore released Harris with a condition that he be placed on home detention.  In addition, I couldn't have been more explicit with Harris about the terms of his home detention, instructing him not to have contact with any witnesses, co-defendants, or victims.  During the hearing, when the Government requested that Harris not have "any contact with any of the witnesses or any of the individuals who may plead guilty and are considering testifying against him," I stated that such a condition would be included in the terms of his home detention, asked Harris if he understood that term, and he stated that he understood everything. [DE 162, at 17-18.] Then, I issued an order explaining my finding, and explicitly stating that "Harris may not contact any witnesses,

-1-

individuals with a criminal background, victims, or co-defendants." [DE 118, at 5.]

The Government filed a Motion to Revoke Bond on November 4, 2011, and I held a hearing on November 7, 2011. At the hearing, the Government proffered that a witness would testify that after his September 2011 release, Harris had several contacts with a witness, Darriell Watkins, in person, and that Harris had contact with co-defendant Alnese Frazier via Facebook and Twitter. As I had specifically instructed Harris not to contact any witness or co-defendants, I concluded that he violated his bond conditions and he was remanded to custody. [DE 157.]

Since then, Harris requested a hearing to submit evidence showing that he didn't violate the terms of his release. At the hearing on January 4, 2012, Harris presented two arguments: (1) his contact with Watkins did not violate the terms of his release; and (2) he never initiated contact with co-defendants via Facebook or Twitter. Both arguments fail.

As to his first argument, Harris didn't deny that he had multiple in-person contacts with Watkins. Instead, he argued that he didn't know that Watkins would be a witness in the trial against him. The Government's position is that Harris knew Watkins would be a witness, pointing to the indictment against Harris and submitting Government's Exhibit 1. Specifically, the Government pointed to paragraph 32 of the indictment, which states that "an indicted co-conspirator and HARRIS, went to the JP Morgan Chase Bank, Munster, Indiana, wherein an unindicted co-conspirator, as part of the on-going fraud scheme, presented documents in an attempt to obtain a $5,000.00 cash advance on the Chase credit card account ending in 9022 of MS, of California, without MS's knowledge, authority, and permission." [DE 1, at 11.] Then the Government referenced parts of Exhibit 1, a discovery document the Government turned over to Harris' counsel in September 2010. One of the documents is the Munster police report detailing

an April 7, 2008 arrest of Harris and Watkins after an attempt to obtain a fraudulent cash advance from a Chase branch. [Ex. 1, at 000600.]

The Government contended that because Watkins is referenced in the indictment in a way that Harris would surely recognize her, he should have known she would be a witness. Moreover, the Government pointed out that Harris admitted he received the first two pages of Exhibit 1, which lists the contents of the discovery materials, including police reports concerning Harris and Watkins' April 7, 2008 arrest.

Harris clearly violated my instruction that he may not contact any witnesses. I'm unconvinced that Harris didn't know that Darriell Watkins would be a witness in the Government's case against him. Harris admitted that although he did not receive all of the materials, he received the first two pages of Government Exhibit 1, which mentions Watkins several times. And even though the connection is somewhat tangential, I can't believe that Harris didn't know that paragraph 32 of the indictment referenced Watkins.

In sum, Harris' claim that he didn't know Watkins would be a witness in his trial is not worthy of belief. His contact with her violated the terms of his pretrial release that I set at the August 2011 hearing, and this remains reason enough to have revoked his bond.

In addition, Harris' Twitter page shows at least two instances where he made a comment to Alnese Frazier, one of his co-defendants in this case. While it is true that Frazier may have initiated the contact, the bottom line is that he responded to her and this amounts to a contact with a co-defendant. This was another clear violation of his pretrial release that I set in the August 2011 hearing when I decided to release the defendant.

For the foregoing reasons and the reasons I stated at the hearing, Harris violated the terms

of his release by contacting a witness as well as a co-defendant.  The Motion to Reinstate Bond

is therefore **DENIED**.

       **SO ORDERED**.

       ENTERED: January 10, 2012

                         s/ Philip P. Simon
                         PHILIP P. SIMON, CHIEF JUDGE
                         UNITED STATES DISTRICT COURT