UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION


UNITED STATES OF AMERICA,           )
                                    )
            v.                      ) CAUSE NO. 2:10 CR 123
                                    )
WILLIE J. HARRIS                    )


OPINION AND ORDER

This matter is before the court on the Motion to Terminate
Counsel [DE 201] filed by the defendant, Willie J. Harris, on
February 29, 2012.  For the following reasons, the motion is
**DENIED.**

Background

The defendant, Willie J. Harris, is charged in a 10 count
indictment with conspiracy, fraud, and identity theft.  On
September 2, 2010, the court appointed Attorney Michael W. Bosch
to represent Harris.  Harris initially was denied bond and
detained at the Kankakee County Detention Center.  Harris filed a
motion to re-open the detention hearing.  At the hearing on the
motion, Harris complained that he no longer wanted Attorney Bosch
to represent him, citing insufficient communication.  The court
told Harris that it would only appoint one more attorney and
advised him to cooperate with his new counsel.  Attorney Bosch
was terminated, and Attorney James Thiros was appointed.

On January 4, 2012, Attorney Thiros filed a motion to with-
draw, and on January 12, 2012, Harris filed a motion to terminate

Attorney Thiros' services and requested another attorney be appointed. The court denied Thiros' and Harris' motions, explaining that the record revealed that there was sufficient communication and that Harris' multiple attempts to have new counsel appointed was simply an attempt to game the system and delay trial.

Harris filed a subsequent motion to terminate counsel on February 29, 2012. The court conducted a hearing on Harris' motion on March 12, 2012. At the hearing, Harris complained that Attorney Thiros did not sufficiently communicate with him and that Attorney Thiros was not prepared at his bond revocation hearing or the hearing on Harris' motion to reconsider bond. Harris explained that District Judge Philip Simon instructed him not to have contact with any co-defendants or witnesses when Judge Simon released him on bond. The final pre-trial conference has not been held, the government has not produced a witness list, and Judge Simon did not give a list of specific witnesses with whom Harris was required to avoid contact.

Harris complains that the only witnesses he knew he was prohibited from contacting were those listed on a U.S. Postal report he obtained that identified some of the government's potential witnesses. Darriell Watkins was not listed in the report, so Harris believed he could contact her. The petition to

revoke Harris' bond alleged that he contacted Watkins.  Harris

states that Attorney Thiros did not produce the postal report at

the hearing and therefore was unprepared.  Judge Simon revoked

Harris' bond, explaining that it was clear from the indictment

and from the fact that Harris was arrested with Watkins that he

was prohibited from talking to her.  Harris also admitted that he

received the first two pages of Government Exhibit 1, which

mentioned Watkins several times.  Moreover, Harris violated his

bond by contacting a co-defendant, whom he was aware he was

prohibited from contacting.  Harris' only justification was that

his co-defendant, Alnese Frazier, initiated the contact.  Harris

complains that Attorney Thiros refused to re-litigate detention

with Judge Simon, arguing that some of Judge Simon's factual

findings were incorrect.  For these reasons, Harris has found

Attorney Thiros' representation ineffective and desires to have

new counsel appointed.

## Discussion

"The Sixth Amendment provides that '[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to have the

Assistance of Counsel for his defence.'" ***United States v. Gonza-***

***lez-Lopez***, 548 U.S. 140, 144, 126 S.Ct. 2557, 2561, 165 L.Ed.2d

409 (2006). The accused has the right to retain counsel of his

choosing, however, "the right to counsel of choice does not ex-

tend to defendants who require counsel to be appointed for them."
*Gonzalez-Lopez*, 548 U.S. at 151, 126 S.Ct. at 2565; *Carlson v.
Jess*, 526 F.3d 1018, 1025 (7th Cir. 2008)("[A]n indigent defen-
dant generally has no right to have his counsel of choice ap-
pointed."). The Sixth Amendment only is intended to ensure that
each criminal defendant will have an effective advocate. *Wheat v.
United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100
L.Ed.2d 140 (1988).

Those who are unable to retain their own attorney do not
have a complaint arising under the Sixth Amendment so long as
they are adequately represented by an appointed attorney. *Caplin
& Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109
S.Ct. 2646, 2652, 105 L.Ed.2d 528 (1989). "[W]hen a trial court
refuses to appoint new counsel, the defendant can only show a
denial of a constitutional right if he can establish that his
counsel was ultimately ineffective." *Carlson*, 526 F.3d at 1025.
"To establish ineffective assistance of counsel, a defendant must
show: (1) that his counsel's performance fell below an objective
standard of reasonableness and (2) that he was prejudiced by the
deficient performance." *United States ex rel. Johnson v. Walls*,
2002 WL 1559700, *3 (N.D. Ill. July 11, 2002) (*citing Strickland
v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d
674 (1984)). "The objective standard of reasonableness for

4

counsel includes keeping the defendant informed on important

developments in the course of the prosecution, and consulting

with the defendant on important decisions." *United States v.*

*Granada*, 1994 WL 3330235, *6 (June 29, 1994) (*citing* **Strickland**,

466 U.S. at 688, 104 S.Ct. at 2065). Counsel must consult with

his client and keep him apprised of the case. *Granada*, 1994 WL

3330235 at *6.

Title 18 U.S.C. §3006 explains the criminal defendant's

right to counsel.  Under this statute, the defendant may request

for the court to substitute counsel if he can establish that it

is "in the interest of justice".  *Martel v. Clair*, ___ S.Ct.___,

2012 WL 685759, *10 (March 5, 2012).  The court must consider a

variety of factors when determining whether it is in the inter-

ests of justice to substitute counsel, including "the timeliness

of the motion; the adequacy of the district court's inquiry into

the defendant's complaint; and the asserted cause for the com-

plaint, including the extent of the conflict or breakdown in

communication between lawyer and client."  *Martel*, 2012 WL 685759

at *10.  Requests made after years of litigation on the eve of

trial or ruling on a dispositive motion may be denied.  *Martel*,

2012 WL 685759 at *11 (denying motion to substitute counsel made

ten years after litigation commenced and submitted when the court

was putting the finishing touches on its denial of the plain-
tiff's habeas petition).

When determining whether to substitute counsel, the court
must probe into why the defendant wants a new attorney. **Martel**,
2012 WL 685759 at *11. The court must explore the extent of the
conflict and the breakdown in communication between the lawyer
and the client. Because the inquiry is fact specific, the trial
court's ruling may be overturned only for an abuse of discretion.
**Martel**, 2012 WL 685759 at *10. "Disagreements over trial strat-
egy and a tempestuous relationship do not amount to a conflict
necessitating substitution." **United States v. Andrews**, 754
F.Supp. 1195, 1197 (N.D. Ill. 1990) (*citing* **United States v.
Hillsberg**, 812 F.2d 328, 333—34 (7th Cir. 1987) (denial of sub-
stitution motion need not be granted "where defendant and counsel
have personality conflicts and disagreements over trial strat-
egy"). Denying a motion to substitute counsel "is not reversible
error where defendant abruptly states that he does not trust his
attorney but gives no grounds for that distrust, . . . or where
defendant and counsel have 'personality conflicts and disagree-
ments over trial strategy.'" **Hillsberg**, 812 F.2d at 333-334.
Furthermore, the attorney-client relationship is not considered
broken, and thus the court is not required to appoint new coun-
sel, when the defendant's complaint is that the lawyer refuses to

file a futile motion.  **_Martel_**, 2012 WL 685759 at *12 (denying

motion to substitute counsel based on complaints that attorney

refused to file a futile motion).

Moreover, the court will not allow the defendant to "game

the system" by filing motions to delay the trial. _See_ **_Carlson_**,

526 F.3d at 1026.  When a trial is imminent, it may significantly

delay the trial to appoint a new attorney and to allow the attor-

ney time to become familiar with the case. The court may consider

its docket in making this assessment, as well as the defendant's

previous requests for new counsel, although these factors may not

be applied rigidly or arbitrarily. _See_ **_Carlson_**, 526 F.3d at 1026;

**_United States v. Williams_**, 576 F.3d 385, 390 (7th Cir. 2009).

Harris has failed to show that Attorney Thiros has been

ineffective.  Rather, the record reflects that Attorney Thiros

helped Harris obtain bond on August 31, 2011.  Harris violated

his bond by contacting a government witness and a co-defendant.

Harris has not denied that he contacted a co-defendant, and this

violation was enough to revoke his bond.  However, Harris com-

plains that Attorney Thiros was ineffective for failing to pro-

duce the U.S. Postal report that identified some of the govern-

ment's potential witnesses and did not list Watkins.  Harris

complains that the witnesses listed in the Postal report were the

only witnesses he knew he was prohibited from contacting.  Judge

Simon did not accept Harris' argument at the hearing, nor does

this court believe Harris' story now.  Harris was arrested with

Watkins, Watkins was included as an unnamed co-conspirator in the

indictment, which gave specific details of the events so that

Harris should have been aware that the indictment referenced

Watkins, and Harris admitted to receiving the government's

Exhibit 1 at the hearing, which identified Watkins.  The fact

that Watkins was not listed in the U.S. Postal report does not

overcome the myriad of documents and events involving Watkins

that Harris was aware of.  Although Attorney Thiros may not have

produced the Postal report at the bond hearing, this was not

detrimental to Harris' position.  The evidence overwhelmingly

showed that Harris should have been aware that Watkins was a

potential witness.  Presentation of a report, which did not

contain the government's list of witnesses, would not have had

any bearing on whether Harris should have known Watkins was a

witness given the multitude of evidence showing Harris knew

otherwise.

Moreover, Harris complained that Attorney Thiros would not

file a motion to re-litigate the issue of bond after Judge Simon

revoked Harris' bond and denied his subsequent motion to rein-

state bond.  Attorney Thiros already had helped Harris obtain

bond on review by the district court, argued for Harris' bond not

to be revoked, and argued for the court to reconsider the revocation of his bond. There is nothing that developed since Judge Simon revoked Harris' bond and denied his motion to reconsider that would have warranted a different decision. Regardless of whether Harris was aware that he could not have contact with Watkins, he admittedly contacted a co-defendant. Harris had no grounds on which to seek reconsideration for a third time, and any further request to reconsider bond would have proved futile. Harris' opposition to Attorney Thiros' strategy does not warrant substitution of counsel.

The evidence clearly reflects that Harris did not take the conditions of his bond seriously, and his claim of naivety is unconvincing. Harris made other attempts to contact people he was prohibited from contacting. He asked Watkins to get him the telephone number of Diontria Frazier, a co-defendant, because she blocked him on Facebook. Harris also attempted to contact the sisters of another co-defendant, Amber Field. This is not Harris' first arrest, and he should be familiar with the consequences for failing to follow court orders. At the time of his first detention hearing, Harris had an outstanding warrant for failing to satisfy the conditions of his probation, including obtaining his GED and completing community service, along with a failure to appear. Despite Harris' failure to abide by the terms

of his bond, Attorney Thiros advocated on behalf of Harris at the bond revocation hearing and the hearing on his motion to reconsider bond.  Attorney Thiros' refusal to make yet another request for bond is simply a disagreement over trial strategy and not grounds on which new counsel must be appointed.  Attorney Thiros has adequately advocated on behalf of Harris on multiple occasions.

   Harris was first appointed Attorney Michael Bosch, and asked for a new attorney due to a lack of communication.  Attorney Thiros was then appointed, and Harris has twice sought to have him removed from the case citing the same reason, lack of communication.  Harris complains that his trial has been continued, yet he seeks new counsel, which will further delay resolution of his case.  Harris appears to be employing tactics to game the system and delay resolution of his case.  Harris has not demonstrated that Attorney Thiros' assistance has been ineffective.  Rather, Attorney Thiros has advocated for Harris to receive bond and provided competent representation.  For these reasons, the Motion to Terminate Counsel [DE 201] filed by the defendant, Willie J. Harris, on February 29, 2012, is **DENIED.**

   ENTERED this 19th day of March, 2012

                              s/ ANDREW P. RODOVICH
                                United States Magistrate Judge