UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| WILLIE J. HARRIS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Cause No. 2:10CR123-PPS |
| v. | ) |  |
|  | ) |  |
| UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**OPINION AND ORDER**

Willie J. Harris was the leader of a massive identity theft ring and for his efforts he was convicted by a jury of a slew of crimes generally involving credit card fraud and identity theft. I sentenced him to 156 months' imprisonment and ordered him to pay $299,298.67 in restitution. He says he received ineffective assistance of counsel, and he now seeks habeas corpus relief under 28 U.S.C. § 2255. Harris's experienced and capable lawyer provided him with a robust defense and fought vigorously on his behalf. There are simply no grounds for relief, and so his petition will be denied.

**Background**

Willie Harris engaged in fraudulent transactions in Indiana beginning in 2007 and lasting until 2010. He and seven co-conspirators fraudulently added themselves as authorized users on existing credit card accounts without the account holders' permission or knowledge. Harris and his co-conspirators then took out cash advances, cashed convenience checks, and made fraudulent purchases. In total, Harris and his co-

conspirators' scheme resulted in about $300,000 of loss to over 50 victims.

Although Harris' scheme continued until 2010, he had already caught the attention of law enforcement in 2008. On April 7, 2008, Harris and one of his co-conspirators, Darrielle Watkins, attempted to obtain a $4,500 cash advance at a bank in Munster, Indiana. Harris waited in his truck outside of the bank, while Watkins went inside. The bank employee was suspicious of Watkins and called the police. Upon arrival at the scene, an officer arrested Harris and placed him in the back of the police car. Another officer searched Watkins and discovered the fraudulent credit card, a second credit card not in Watkins' name, and a slip of paper containing the true credit card holder's personal information and bank password.

When Watkins was placed in a patrol car, she asked the officer to retrieve her personal belongings from Harris' truck, including her backpack, coat, and "school stuff." The officer came back with her backpack, wallet, and a notebook that was under the backpack. All of these items were in plain view in the truck. Watkins told the officers that the notebook was not hers. When the officers later presented the notebook to Harris, he too claimed that it was not his.

The notebook proved to be especially incriminating. It contained identifying information of over a dozen people and was covered in Harris' fingerprints. It was introduced as evidence in the trial against Harris. The incident at the bank in Munster was a prelude. The federal investigation into Harris and his fraud ring didn't commence until the following year — March of 2009 — when Chase Bank notified

Postal Inspector Carroll Harris about suspicious transactions. Three individuals initially were determined to be the culprits, and Harris was implicated later as the investigation progressed. [DE 592 at 220.]

Harris and six others were indicted on charges of conspiracy, identity theft, credit card fraud, and aggravated identity theft on July 21, 2010. Five of Harris' co-defendants pleaded guilty, and Harris and one other defendant went to trial. A jury convicted Harris on seven counts, including conspiracy (Count 1), identity theft (Counts 4 and 5), credit card fraud (Counts 6, 8, and 9), and aggravated identity theft (Count 10), and I sentenced him to a total term of 156 months and three years' supervised release on April 4, 2014. [DE 405; DE 575.] He appealed to the Seventh Circuit, which affirmed the verdict and sentence on October 1, 2015. [DE 664.]

**Standard of Review**

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief under § 2255 is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). A § 2255 motion is neither a "recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Such relief is extraordinary because it seeks to reopen the criminal process to

a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

**Discussion**

Liberally construing his *pro se* motion, as I am required to do, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), I discern a multitude of various claims that Harris alleges warrant habeas relief. He claims that his trial counsel was ineffective based on numerous grounds and that his appellate counsel was ineffective for failing to raise the ineffective assistance of his trial counsel and failing to raise certain other issues related to his trial. Harris also argues that several substantive errors denied him the right to a fair trial.

*Ineffective Assistance of Trial Counsel*

I begin first with Harris' claim that his trial counsel was constitutionally ineffective. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Hinton v. Alabama*, 134 S.Ct. 1081, 1088 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 688-94 (2009)). If the defendant cannot establish both of these factors, the claim fails. *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). In applying this test, the court is "highly deferential to counsel," and there is a "strong presumption that counsel's decisions constitute reasonable litigation strategy." *United States v. Scanga*,

4

225 F.3d 780, 783-784 (7th Cir. 2000) (internal quotation marks omitted).

Harris claims that there are eight bases for finding that his trial counsel was ineffective. Harris says that his trial counsel failed to: (1) challenge the illegality of the search and seizure; (2) object to my opinion denying his motion to suppress; (3) object to the government's vouching of witnesses and detaining officers; (4) object to the government's knowing presentation of perjury; (5) object to a variance; (6) seek suppression of alleged co-conspirators' statements at trial; (7) object to a constructive amendment; and (8) object to the admission of certain documentary evidence at trial. I will address each of these claim in turn.

*1. Failure to challenge the illegality of the search and seizure*

Harris first argues that his attorney was ineffective because he failed to challenge the illegality of the search and seizure in 2008 at the bank in Munster. Harris claims that had his attorney done so, the evidence obtained from this search would have been excluded and the charges against him dismissed. At the outset, I note that Harris' attorney *did* challenge the search of his automobile by filing a motion to suppress. [DE 306.] Harris' motion was the subject of a hearing, extensive briefing, and a 17-page opinion. After carefully considering the arguments made by both Harris' counsel and the government, I denied Harris' motion to suppress. [DE 339.] Moreover, Harris' appellate counsel appealed my ruling, which was affirmed by the Seventh Circuit. [DE 35 in Case No. 14-1486 (7th Cir. July 1, 2015).] So to say that Harris' counsel failed to challenge the admission of the evidence obtained from this search is nonsensical.

5

But Harris seems to be trying to make a slightly different point. He indicates that his trial counsel did not challenge the *stop*, i.e., the seizure of his person, as opposed to the *search*. The problem with this argument is that it mischaracterizes what actually happened. Harris' trial counsel in fact challenged the seizure. [*See* DE 325 at 34.] Harris' motion sought the suppression of "any and all items seized from the Defendant's vehicle due to an unlawful search and *seizure*." [DE 306 at 3 (emphasis added).] Harris' attorney argued in his motion that, at the time of his arrest, Harris "had broken no laws and he had committed no driving offenses, however, an officer of the Munster Police Department confronted Willie Harris," and "detained/arrested Defendant without a warrant and without probable cause." [*Id.* at 1.]

Additionally, the substance of trial counsel's argument at the suppression hearing also focused heavily on the arrest. Trial counsel noted that he thought Harris was arrested because the car had been parked in a handicapped parking spot but that is not an arrestable offense. He further argued that under Indiana law, for an infraction such as this one, an individual may be detained only to gather information concerning their identity and registration so as to issue a citation. [DE 331-1 at 34.] He argued that a brief detention for these purposes was not grounds to incarcerate someone or to put him in a custodial situation. [*Id.*]

Finally, in his opening brief, Harris' appellate counsel also indicated that Harris' trial counsel had raised and argued the issue of Harris' detention and arrest. [DE 15 at 5, in Case No. 14-1846 (7th Cir. Filed Sept. 2, 2014).] Likewise, in rejecting Harris'

6

argument that the notebook should have been suppressed, the Seventh Circuit expressly noted that Harris' trial counsel moved to suppress the notebook on the ground that his arrest at the bank was illegal. But this argument was a nonstarter because, as the Seventh Circuit explained, even if the arrest at the bank was illegal, it did not bar the admission of evidence that was found as a result of a valid automobile search. [DE 35 at 16, in Case No. 14-1846 (7th Cir. July 1, 2015).] So contrary to Harris' contention, his trial counsel challenged the seizure, and the Seventh Circuit ruled that regardless of whether the arrest was illegal or not, the evidence was properly admitted. There is, as a result, no merit to Harris' argument.

*2. Failure to object to my Opinion denying his motion to suppress*

I also reject out of hand Harris' claim that his trial counsel should have objected to my opinion denying his motion to suppress. I'm not quite sure what that means. Harris' counsel adequately fulfilled his duties by filing a motion to suppress and vigorously arguing in support of that motion. Any objection after I issued my opinion would have been fruitless, as well as totally misplaced since, as trial counsel likely understood, the proper means of challenging my ruling was on appeal, which is precisely what counsel did, albeit unsuccessfully. Therefore, Harris' counsel's performance with respect to the search and seizure was not deficient and did not prejudice him in any way.

*3. Failure to object to government's vouching of detaining officer's testimony*

Harris next argues that his trial counsel was ineffective for failing to object when

7

the government attorney vouched for the detaining officers and asked about an officer's thoughts during the search of Harris' car. Harris points to one portion of the government attorney's argument during the suppression hearing I held on March 6, 2013. Here is the allegedly objectionable statement from the government:

> So, even if the Court were to assume this was a search, it was reasonable for the officers to believe that if Willie Harris drove the - drove Darielle Watkins there, and it was for the express purpose of her to go into the bank to obtain that cash advance fraudulently on Mr. Sulzman's bank credit card, that there might be some other material inside that vehicle relating to it including in her backpack.
>
> Since the notebook was under her backpack, and she requested that he retrieve it, it was reasonable for them to believe there might be something in that car.
>
> So, even if Detective Janiga didn't believe that, it was reasonable for him to go into that vehicle and take anything that belonged to the Defendant who at that time was under arrest which was Darrielle Watkins.

[DE 325 at 32:3-16.]

"Improper vouching occurs when a prosecutor expresses her personal opinion about the truthfulness of a witness or when she implies facts not before the jury lend a witness credibility." *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000). Reviewing the allegedly objectionable statements from the prosecutor, I discern no vouching at all. The prosecutor never even references, or alludes to, the officers' credibility. There simply is nothing in this portion of the argument that comes close to objectionable on the grounds that it constitutes improper vouching.

But more to the point, impermissible vouching is a rule meant to prevent a party from leading a *jury* astray. The exchange in question was at a suppression hearing. So

8

even if Harris' counsel had objected – an objection I would have overruled – this would not have in any way affected my decision as to whether to suppress the evidence. Harris therefore has not demonstrated either deficient performance or prejudice.

*4. Failure to object to government's knowing presentation of perjury*

Harris further claims that his trial counsel failed to object to the government's knowing presentation of perjury. The problem is that Harris has not presented any evidence or affidavits to support those accusations. Harris also cannot show that his trial counsel had any reason to believe that witnesses were committing perjury, so there was nothing for his trial counsel to object to. Thus, his trial counsel was not ineffective in this regard.

*5. Failure to object to alleged variance*

Harris' next alleged ground for ineffective assistance is trial counsel's failure to object to the variance of multiple conspiracies that Harris alleges occurred at trial. That argument is meritless. My jury instructions included a multiple conspiracy instruction. [DE 402 at 30.] I specifically told the jury that, "Count 1 charges that there was a single conspiracy. The defendants contend that there was more than one conspiracy." [*Id.*] I instructed the jury that the "government was not required to prove the exact conspiracy charged in the indictment, so long as it proves that the defendants were members of a smaller conspiracy contained within the charged conspiracy." [*Id.*] So not only did my instructions properly instruct the jury on the law regarding multiple conspiracies (meaning there was no prejudice), but the instruction expressly indicated that the

9

defendants had contended there was more than one conspiracy (meaning there was no deficient performance).

Harris also argues that there was a variance created by the "on or about date" language in the indictment, and his trial counsel was ineffective for failing to raise this issue. Harris claims that the evidence presented at trial did not show that Harris committed the charged offenses at a time reasonably near that named in the indictment. "Where the indictment alleges that an offense allegedly occurred 'on or about' a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date." *United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988). Proof of a date "reasonably near to the specified date is sufficient." *Id.*

The indictment alleged that the offenses occurred "[f]rom on or about March 2007 and continuing through on or about January 2010." [DE 1 at 3.] Harris doesn't say how much time was between the "on or about" date charged in the indictment and the date proved at trial. He says only that the offenses he is alleged to have committed were committed prior to the commencement date stated in the charged indictment. He also doesn't tell me how this variance prejudiced him. And given that the time frame of the conspiracy spanned almost three years, I cannot say that simply the fact that some of the actual conduct occurred before March 2007 prejudiced Harris' defense in any way. Because this argument has no merit, there was nothing for trial counsel to object to. His performance was not at all deficient.

*6. Failure to seek suppression of alleged co-conspirators' statements at trial*

Harris further takes issue with his trial counsel's alleged failure to object to the admission of co-conspirators' statements. He believes that his counsel should have filed a motion to suppress these statements. At the beginning of the trial, I conditionally admitted the co-conspirators' statements based upon the government's thorough *Santiago* proffer. After the government rested its case-in-chief, I determined that:

> [T]he evidence that has been presented [] establishes that it's more likely than not that a criminal conspiracy existed as detailed in the proffer, and that the statements in question were made in the course of and in furtherance of that conspiracy.
>
> In addition, the evidence shows that the defendants each were members of the conspiracy at the time that the statements were made, therefore, I now order that the statements of the co-conspirators and co-defendants that were previously conditionally admitted are hereby admitted for all purposes and consideration.

[DE 593 at 70:3-13.]

As an initial matter, I must note that a motion to suppress would have been completely unnecessary. Under the standard set forth in *Santiago* and the Federal Rules of Evidence, I was required to conduct my own analysis as to whether the government had established by a preponderance of the evidence that a conspiracy existed. *See United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978). An objection from trial counsel was irrelevant. Furthermore, to prevail on an ineffective assistance of counsel claim for failure to file a motion to suppress, the defendant must prove that the motion was meritorious. *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017). Such is not the case here. Regardless of whether Harris' trial counsel filed a motion to suppress his co-

conspirators' statements, I nonetheless would have found that the statements were admissible. Simply put, neither an objection from trial counsel nor a motion to suppress would have made any difference. As a result, Harris cannot demonstrate any prejudice as a result of trial counsel's failure to object to the admission of these statements or to file a motion to suppress.

*7. Failure to object to constructive amendment related to B.S. account*

Harris argues that his trial counsel was ineffective on yet another ground. Harris says that he failed to object to a constructive amendment that occurred at trial. A constructive amendment to an indictment occurs when either the government, the court, or both broadens the possible bases for conviction beyond those presented by the grand jury. *United States v. Turner*, 836 F.3d 849, 863 (7th Cir. 2016). "However, not all variations in proof that contradict or supplement verbiage in the indictment rise to the level of constructive amendment." *Id.* (quoting *United States v. Phillips*, 745 F.3d 829, 832 (7th Cir. 2014)). Rather, the offense charged in the indictment must be "materially different or substantially altered at trial," such that it is impossible to know whether the grand jury would have indicted for the crime actually proved. *Id.*

The indictment alleged that Harris obtained a cash advance on a Citicard credit card account ending in the numbers 2767 and belonging to a victim identified as "B.S." [DE 1 at 10.] A trial, the evidence showed that the victim B.S. owned an account ending in the numbers 2767 and that Harris and a co-defendant requested to be added to her account. B.S. received two Citicards ending in the numbers 8382 in her name and in the

12

name of Harris' co-defendant. Harris claims there is a variance because the actual fraudulent withdrawal came from the Citicard ending in 8382 – not the Citicard ending in 2767 as alleged in the indictment.

Based on the evidence presented at trial, it is clear that these accounts were associated. Harris participated in a conspiracy to defraud the victim B.S., who owned the account ending in 2767 (the account alleged in the indictment), by adding his co-defendants' name to a newly and fraudulently issued credit card that, although ending in different numbers, was clearly associated with the account alleged in the indictment. The original account was compromised, so the victim was issued a new account number, which ended in 8382. [*See* DE 592 at 121-22.] Harris was on notice, based on all of the government's disclosures, that this was the account that he was alleged to have defrauded. Moreover, Harris fails to explain how the government or the Court expanded the basis for conviction beyond the parameters of the indictment. There was no material change to the offense alleged in the indictment and nothing for counsel to object to. As a result, Harris' argument fails.

*8. Failed to object to certain documentary evidence at trial*

Harris' final basis for alleging ineffective assistance of counsel is trial counsel's supposed failure to object to documentary evidence at trial. In particular, he takes issue with several government exhibits that he says were admitted without objection from his trial counsel: exhibits 18, 47A, 62, 62A, 66, 153A, 153B, and 271.

But Harris' arguments on this point fall flat when I look back at the trial record.

His trial counsel did in fact object to all but one of these exhibits: Exhibits 18 [DE 589 at 158:2-5], 62 [DE 587 at 260:5-6], 62A [*id.*], 66 [*id.* at 265:8], 153A [*id.* at 242:17-20], 153B [*id.* at 273:22], and 271 [*id.* at 136:4]. Trial counsel did not object to Exhibit 47A's admission, but I don't see any basis for objecting. Harris' contention is that Exhibit 47A was shown to the jury, but the government should have shown Exhibit 47R, which was the redacted version of the exhibit. The record is clear, however, that the redacted version was in fact shown to the jury, and it was redacted because it contained personal identifying information (e.g., social security number, address). [DE 589 103:14-104:9.] Thus, even if it had been shown to the jury, the only consequence was that personal identifying information was revealed to the jury, which is not at all prejudicial to Harris. There was nothing for trial counsel to object to.

Trial counsel's performance in this respect was not deficient, but even if it was, there was no prejudice because Harris has not come close to showing that there is a reasonable probability that the outcome of the proceeding would have been different. Evidentiary rulings may be an appropriate basis for habeas relief if they were so prejudicial that they compromised the defendant's due process right to a fundamentally fair trial. *Anderson v. Sternes*, 243 F.3d 1049, 1053 (7th Cir. 2001). That is not the case here.

It is also not the case that the cumulative effect of each supposed error rises to the level of ineffective assistance of counsel. As I have already explained, trial counsel's performance was not objectively unreasonable in any way. Nor is there any basis to

conclude that there exists a reasonable probability that the outcome would have been any different even if Harris' counsel had performed in precisely the manner Harris thinks he should have. Harris' claim for ineffective assistance of trial counsel does not warrant habeas relief.

*Ineffective Assistance of Appellate Counsel*

Harris' gripes with counsel do not end there. He also claims his appellate counsel, who was not the same as his trial counsel, was ineffective. Harris faults his appellate counsel for failing to raise two of the issues discussed above: the multiple conspiracy variance and the constructive amendment related to the B.S. account. For the same reasons I found that trial counsel was not deficient for failing to raise either of these issues, I also hold that his appellate counsel was not ineffective for failing to include these issues in Harris' appeal to the Seventh Circuit.

In addition, Harris claims his appellate counsel was ineffective because he failed to raise on appeal the ineffective assistance of his trial counsel. Harris' arguments here are misplaced. "A litigant gets to argue ineffective assistance ... just once." *Vinyard v. United States*, 804 F.3d 1218, 1227 (7th Cir. 2015). And ineffective-assistance claims nearly always require more extensive and targeted factual development than is available in the record on direct appeal. *Id.* Thus, bringing a premature claim for ineffective assistance of counsel on direct appeal is not prudent, and the Seventh Circuit has repeatedly cautioned defendants against raising such claims on direct appeal. *Id.* (citing cases).

So contrary to what Harris alleges, his appellate counsel's strategic decision *not to* raise trial counsel's ineffectiveness was far from an objectively unreasonable decision. It was actually completely prudent. If the issue had been raised on Harris' direct appeal, then Harris would not have been able to raise it now on his § 2255 motion absent changed circumstances. *Id.* And he would not have had the benefit of a more fully developed factual record in doing so. Therefore, Harris cannot succeed on this claim.

*Substantive Claims*

Although Harris presents most of his claims through the lens of ineffective assistance of counsel, it also appears that he is attempting to raise substantive claims of errors that occurred during his trial. From what I can glean from his motion, in addition to arguing ineffective assistance of both trial and appellate counsel, Harris argues that: (1) the government suborned known, false testimony at trial; (2) co-conspirators' statements were improperly admitted in violation of Federal Rule of Evidence 801(d)(2)(E); and (3) there was a constructive amendment regarding the victim B.S.

To the extent that Harris claims that these trial errors, apart from ineffective assistance of counsel, are grounds for habeas relief, I must first determine whether he has procedurally defaulted these claims. "A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016).

On appeal, Harris raised several grounds. He claimed that I erred in denying his

motion to suppress and that the verdict was not supported by sufficient evidence. He also challenged several sentencing enhancements that were applied to him and argued that his sentence was unreasonable. Harris did not raise these three claims he brings now, and so he has procedurally defaulted them.

Harris can still seek relief on his procedurally defaulted claims but only if he can first demonstrate both cause and prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Harris does not provide any basis for excusing his procedural default, but he did bring a claim of ineffective assistance of appellate counsel as explained above. This may serve as a basis for cause for excusing his procedural default. *McCleese v. United States*, 75 F.3d 1174, 1179-80 (7th Cir. 1996). Harris must show that if his appellate counsel had raised the claims on direct appeal, there would have been a reasonable probability that the claims would have been successful. *Id.* at 1180.

Harris cannot meet this standard. Even if these claims had been raised on appeal, they would not have been successful for all of the reasons I have already discussed. Harris' baseless accusation that the government put on knowingly false testimony is meritless. The statements of Harris' co-conspirators were properly admitted under the Federal Rules of Evidence. And there was no constructive amendment. Moreover, even if they had not been procedurally defaulted, I would still hold now that they are not grounds warranting habeas relief.

**Certificate of Appealability**

Because I am denying Harris's § 2255 motion, I must consider whether to grant a certificate of appealability on any of his claims. *See* Rules Gov. § 2255 Procs. 11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In other words, Harris must show that reasonable jurists could debate whether his petition should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). I am entirely unpersuaded that reasonable jurists could reach a different conclusion about Harris's right to relief on any of the grounds asserted in his motion under § 2255, and so I will deny a certificate of appealability.

**Conclusion**

For the reasons stated above, Harris's Motion to Vacate must be denied. Harris has also requested an evidentiary hearing. A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Such is the case here, and I will deny Harris's request for a hearing.

ACCORDINGLY:

Willie Harris' Motion to Vacate under 28 U.S.C. § 2255 [DE 715] is **DENIED**, and I **DECLINE** to issue a Certificate of Appealability.

Harris' Motion to Withdraw Docket No. 717 [DE 726] is **GRANTED**. Harris' Motion for Recusal [DE 717] is **DENIED AS MOOT**.

**SO ORDERED.**

ENTERED: June 27, 2018.

                                                 s/ Philip P. Simon
                                                 JUDGE
                                                 UNITED STATES DISTRICT COURT